**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MISAEL SAQUEO LOPEZ-TUBAC,<br><br>Defendant. | No. 18-CR-3020-LTS<br><br>**REPORT AND RECOMMENDATION** |

_____

TABLE OF CONTENTS

I.   Introduction……………………………………………………………………2
II.  Facts ………………………………………………………………………… 2
III. Applicable Law ……………………………………………………………….5
IV. Discussion ……………………………………………………………………7
   A.  Conflating Target with Defendant……………………………………………8
   B.  Questioning Defendant During Stop ………………………………………… 10
   C.  Inventory Search After Arrest …………………………………………………11
V.  Conclusion…………………………………………………………………… 13

# I. *INTRODUCTION*

This matter is before the Court pursuant to defendant's Motion to Suppress Evidence allegedly obtained in violation of the Fourth, Fifth, and Sixth Amendments to the United States Constitution. (Doc. 22). The Government resists defendant's motion. (Doc. 24). A grand jury charged defendant on eight counts of immigration-related offenses. Counts One (1), Three (3), Five (5), and Seven (7) charge defendant with Unlawful Use of Identification Document in violation of 18 U.S.C. § 1546(a). (Doc. 2). Counts Two (2), Four (4), Six (6), and Eight (8) charge defendant with Misuse of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B). (*Id.*). Defendant seeks to suppress evidence stemming from a traffic stop that occurred on May 8, 2018, in Waterloo, Iowa. Defendant contends that the Immigration and Customs Enforcement (ICE) agent who arrested defendant lacked reasonable and articulable suspicion to initiate the traffic stop. Defendant further contends that, once stopped, the ICE agent elicited incriminating testimony from defendant without properly appraising defendant of defendant's rights. Additionally, at hearing for this motion, on July 18, 2018, defendant asserted that the inventory search of defendant conducted subsequent to his arrest was in violation of his Fourth Amendment rights. This Court gave the government forty-eight hours to submit a supplemental brief on this issue. Defendant was granted forty-eight hours after the filing of government's supplemental brief to respond. Defendant did not file timely, but in the interest of justice I will address the argument raised at hearing. *See* FED. R. CRIM. P. 45(a)(2).

For the following reasons, I respectfully recommend that the Court **deny** defendant's Motion to Suppress.

# II. *FACTS*

In January, 2017, authorities in Bremer County, Iowa alerted immigration officials to the presence of an immigrant (target) who was present in the country illegally. The

target had been previously removed from the United States in 2011. From the target's past removal record, Immigration and Customs Enforcement (ICE) Deportation Officer (DO) Bryce Callison was able to obtain the target's height, weight, eye color, hair color, and a booking photograph from 2011. The record indicated that the target was sixty-three inches tall, weighed 187 pounds, had brown eyes, and brown hair. Bremer County authorities alerted ICE that the target had been arrested for drunk driving. No photograph from the January 2017, arrest was provided. The address on the vehicle registration matched the address the target provided at the time of his arrest. The address was to a home in a mobile home court located in Waterloo, Iowa.

In February, 2017, DO Callison completed the required paperwork to allow him to conduct surveillance and arrest the target. DO Callison made contact with the manager of the mobile home court shortly thereafter and inquired as to whether the target lived in the mobile court. After viewing the photograph from the target's 2011 removal, the manager confirmed that the target lived in the mobile home court at the address the target gave officers at the time of his January 2017 arrest.

Between February, 2017 and May, 2018, ICE agents attempted to locate and arrest the target multiple times. In March of 2018, ICE agents conducting surveillance of the target residence identified the vehicle associated with the target from the previous drunk driving arrest. On the morning of May 8, 2018, DO Callison again conducted surveillance of the target's residence, backing his vehicle into a parking spot so that the front of his vehicle was facing the direction of the target's home, although DO Callison did not have a direct view of the home. At approximately 6:20 AM on May 8, 2018, while conducting surveillance at the target residence, DO Callison observed a vehicle arrive and park on a street in front of the target residence. DO Callison was positioned such that the vehicle stopped in front of DO Callison with the front of that vehicle facing to DO Callison's right. The target residence was on the far side of the vehicle. DO

Callison observed defendant approach the recently arrived vehicle from the direction of the target residence. Defendant crossed behind the recently arrived vehicle, passed between the recently arrived vehicle and DO Callison, and entered the recently arrived vehicle on the passenger side. DO Callison estimated that defendant passed within 30 feet of him.

DO Callison believed defendant to be the target. DO Callison believed defendant matched the approximate height and weight of the target, and that his face appeared similar to the target.

DO Callison followed the recently arrived vehicle as it departed the area of the target residence. DO Callison radioed for assistance and initiated a stop of the vehicle after following defendant for approximately ten minutes. Once stopped, DO Callison approached the driver-side of the target vehicle. DO Callison identified himself as an immigration officer and spoke directly to defendant, who was seated on the passenger side. DO Callison initially spoke English, but switched to speaking Spanish when he realized defendant could not understand him well enough to answer questions. DO Callison requested defendant's name, asked defendant what his country of citizenship was, and inquired as to whether defendant had permission to be in the United States. During this time, the supporting agents arrived on scene. Defendant identified himself as Misael Saqueo Lopez-Tubac, stated that he was a citizen of Guatemala, and stated that he did not have permission to be in the United States. A supporting agent asked to see defendant's identification. Defendant produced a Guatemalan consular identification card. The consular identification card matched the name defendant gave to DO Callison. To confirm that defendant was not the target, supporting agents took defendant's fingerprints and input them into ICE's computerized system. The system confirmed that defendant was not the target, but indicated that defendant had been previously charged

with an immigration offense. Defendant was administratively arrested and taken to the ICE office in Cedar Rapids, Iowa, for further processing.

While defendant was being fingerprinted, DO Callison questioned the driver. The driver was a Hispanic male and did not resemble the target. The driver indicated that he and defendant were on their way to work. The driver identified their place of employment as a business in Shell Rock, Iowa. The driver was not fingerprinted or questioned regarding his background.

Once at the ICE office, defendant was questioned further and his belongings were inventoried. Among his belongings was a photographic employee identification card for the business in Shell Rock previously identified by the driver. ICE agents contacted this business and obtained defendant's employment paperwork, including a W-4 tax form, a Form I-9, and photocopies of a permanent resident card and a social security card. Further investigation revealed that the social security number used by defendant at the business in Shell Rock was also used by defendant at other businesses. ICE agents obtained I-9 and W-4 forms from these businesses. Defendant was subsequently indicted and charged with multiple counts of unlawful use of identification documents and misuse of a social security card.

### III.   *APPLICABLE LAW*

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Fifth Amendment to the United States Constitution guarantees, *inter alia*, a right to due process and provides protections against self-incrimination. U.S. CONST. AMEND. V. The Sixth Amendment to the United States Constitution guarantees criminal defendants a speedy trial before an impartial jury, the right to confront their accusers, and the right to effective assistance of counsel. U.S. CONST. AMEND. VI. *See also Padilla v. Kentucky*, 559 U.S. 356, 374 (2010) ("It is [the

Court's] responsibility under the Constitution to ensure that no criminal defendant — whether a citizen or not — is left to the mercies of incompetent counsel.") (citation and internal quotations omitted). The protections provided to citizens by these amendments apply just as much to aliens present in the United States illegally as they do to United States citizens. *Martinez Carcamo v. Holder*, 713 F.3d 916, 921 (8th Cir. 2013). The exclusionary rule may be used to preclude the use of evidence obtained in violation of these amendments. *Mapp v. Ohio*, 367 U.S. 643, 656 (1961).

It is well established that a traffic stop constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A traffic stop is lawful if supported by probable cause or reasonable suspicion that a vehicle committed a traffic violation. *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (internal quotations omitted). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Riley*, 684 F.3d 758, 763 (8th Cir. 2012) (quoting *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004)). The reasonable suspicion standard "is a fact-specific inquiry based on the totality of the circumstances in a particular case." *Id.* at 764. Objectively reasonable mistakes of law or fact may still justify a valid traffic stop. *United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010).

An immigration enforcement officer, without requiring a warrant, is authorized:

1) To interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;

2) . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest. . ..

8 U.S.C. § 1357(a). The term "reason to believe" in § 1357(a) means probable cause as required by the Fourth Amendment. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

IV. *DISCUSSION*

Defendant bases the instant motion on two grounds. First, that DO Callison lacked reasonable suspicion to believe that defendant was the target individual and therefore the stop that led to defendant's arrest was in violation of defendant's Fourth Amendment rights. (Doc. 22, at 3). Second, defendant claims that the questioning of defendant during the stop constituted a custodial interrogation which, in the absence of the required *Miranda* warnings, violated defendant's Fifth and Sixth Amendment Rights. (*Id.*). At the July 18, 2018, hearing for the instant motion, defendant raised a third issue regarding the inventory search of defendant's belongings at the ICE office. Defendant argued that the employee identification card discovered during the inventory search should also be suppressed on the grounds that the search was not a true inventory search, but rather a pretext to uncover additional incriminating evidence. (*See* Doc. 27, at 3).

The government resists defendant's motion, claiming that the description of the target was sufficiently similar to that of defendant to raise a reasonable suspicion that defendant was, in fact, the target. (Doc. 24-1, at 4-6). The government asserts that DO Callison was justified in following and stopping the vehicle based on this reasonable suspicion. (*Id.*). In response to defendant's second claim, the government contends that the questioning of defendant during the stop was routine and was reasonably tailored to determine whether defendant was the target. (*Id.*, at 6-8). In response to the third issue

raised by defendant at the hearing, the government contends that the inventory search was a strictly administrative procedure following a lawful arrest and was not intended as a justification for an investigatory search as defendant claims.

### A. *Conflating Target with Defendant*

Defendant contends that, based on the description of the target, it was unreasonable for DO Callison to believe that defendant was the target. (Doc. 22-1, at 5-8). Therefore, defendant argues, the vehicle stop was unreasonable and any evidence derived from the stop should be suppressed. (*Id.*). Defendant correctly cites *Delaware v. Prouse* as establishing the standard that in order to stop a vehicle, law enforcement officers must assert an "articulable and reasonable suspicion . . . that either the vehicle or an occupant is otherwise subject to seizure for violation of law." 440 U.S. 648, 663 (1979). However, defendant holds an incorrect perception of what constitutes an articulable and reasonable suspicion under the facts of this case. Defendant asserts that the physical characteristics of defendant differ so widely from the description of the target that ICE agents relied on that it was unreasonable to conflate the target with defendant. (Doc. 22-1, at 8). Defendant goes so far as to state that "the only true physical similarity between ICE's target and [defendant] is his overall Hispanic appearance." (*Id.*). Defendant claims that the only reason that DO Callison followed defendant was because of his ethnicity. (*Id.*). The facts of the case demonstrate otherwise.

"Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. . .." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). DO Callison was looking for an adult male of Hispanic descent with brown hair and brown eyes. The target sought by DO Callison was sixty-three inches tall and weighed 187 pounds. DO Callison was in possession of a photograph of the target that was approximately seven years old at the time of defendant's arrest and knew that the target lived at the location being surveilled at some point in the

recent past. In the early morning of May 8, 2018, DO Callison observed an adult male of Hispanic descent with brown hair and brown eyes emerge from the vicinity of the target's residence. The individual DO Callison observed was approximately sixty-one inches tall and weighed approximately 152 pounds. Defendant contends that the variance in the physical characteristics between the two men in question demonstrates that DO Callison was unreasonable in his belief that defendant was the target. I disagree.

Without the aid of a point of reference, it is not reasonable to expect a law enforcement officer to be able to discern a difference between sixty-one inches and sixty-three inches. An officer in that position could be justified in broadening their scope of observation beyond individuals of a specific height to individuals of a more general height. Thus, instead of an adult male of Hispanic descent that is exactly sixty-three inches, it was reasonable for DO Callison to be on the lookout for an adult male of Hispanic descent who was relatively short. A variance of two inches does not constitute an unreasonable error. *Harris*, 617 F.3d at 979 (holding that objectively reasonable error is not sufficient to overcome existence of probable cause). The same logic applies to the variance in weight between defendant and the target, especially when weight can change.

Defendant further contends that the photograph relied upon by DO Callison at the time of arrest was "stale," and therefore unreasonable for use in identifying the target seven years after it was taken. Contrary to the position of defendant, the age of the photograph is supportive of DO Callison's identification of defendant as the target. The target was an adult at the time the photograph was taken. A seven year lapse is not likely to change his facial characteristics so significantly that identification would not be possible. Further, allowing for changes in weight or the amount of facial hair that may occur over seven years, defendant is not so dissimilar in appearance from the target that conflation of the two would be unreasonable. (*Compare* Doc. 24-2 *with* Doc. 24-3).

"'The concept of reasonable suspicion . . . is not readily, or even usefully, reduced to a neat set of legal rules,' but must be determined by looking into 'the totality of the circumstances—the whole picture.'" *Wardlow*, 528 U.S. at 126-27 (quoting *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989) (alterations omitted)). In the instant case, the totality of the circumstances weighs in favor of the government. Defendant was observed emerging from the vicinity of the target's residence. Defendant closely resembled the target. Any discrepancy between the target's physical characteristics and defendant's may be excused by the inherent imprecision of human perception in gauging an individual's height and weight without the aid of a fiducial element. Accordingly, I recommend that defendant's motion to suppress based on these grounds be **denied**.

### B. Questioning Defendant During Stop

Defendant contends that, once the stop occurred, ICE agents impermissibly extended "the seizure of the vehicle beyond the time necessary to identify that [defendant] was not their intended target." (Doc. 22-1, at 10). Thus, defendant argues, questions directed at defendant regarding defendant's immigration status without apprising defendant of his rights as required by *Miranda* violated defendant's Fifth and Sixth Amendment rights. (*Id.*, at 10-11). Citing *Briones v. United* States, 390 F.3d 610, 612 (8th Cir. 2004), defendant asserts that the questions asked by ICE agents during the stop were "reasonably likely to elicit an incriminating response from the suspect." According to defendant, once DO Callison ascertained that defendant was not the target, the stop should have been concluded. (Doc. 22-1, at 11-13). Any information derived beyond that point was the result of a custodial interrogation, prior to which defendant should have been informed of his rights. (*Id.*). Defendant therefore contends that the admission by defendant that he did not have permission to be in the United States should be suppressed. (*Id.*, at 10) Again, defendant correctly states the law, but misapplies the facts of the case.

DO Callison was in search of an individual who he believed to be not only in the United States illegally, but also in violation of state criminal laws. (Doc. 24-1, at 2). DO Callison's conduct during the stop was commensurate with what would be required by that investigation. Rather than intending to ensnare, DO Callison's initial questions were reasonably tailored to determine whether defendant was the target of his investigation. DO Callison knew the target's name, country of citizenship and that he was in the United States illegally. Given that defendant was, at that time, believed to be the subject of his investigation, DO Callison was under no obligation to take defendant's answers at face value. The inquiry into the identity of defendant did not end until ICE agents positively confirmed that defendant was not the target by running his fingerprints through the ICE database. Defendant is mistaken in concluding that the lawful stop should have been concluded when defendant responded to DO Callison's questions. Consequently, defendant is mistaken in concluding that the extension of the stop past the initial questioning constituted a custodial interrogation requiring *Miranda* warnings. ICE agents had every right to confirm the identity of defendant beyond defendant's self-reporting. ICE agents were not required to inform defendant of his rights while in the process of confirming the identity of defendant subsequent to a lawful vehicle stop. Accordingly, I recommend that defendant's motion to suppress on these grounds be **denied**.

### C. Inventory Search After Arrest

Finally, defendant contends that the inventory search performed subsequent to defendant's administrative arrest by ICE agents was, in fact, an investigatory search in violation of defendant's Fourth Amendment rights. (Doc. 27, 1-4). Defendant asserts that the inventory search was invalid and that the evidence derived from that search should be suppressed. (*See id.*).

The purpose of an inventory search is to protect the "owner's property while it remains in police custody," as well as to protect "police against claims or disputes over lost or stolen property" and "from potential danger[s]." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "An inventory search must 'be reasonable under the totality of the circumstances . . . and may not be a ruse for general rummaging in order to discover incriminating evidence.'" *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011)). "Examining all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." *Illinois v. Lafayette,* 462 U.S. 640, 646 (1983).

In the instant case, under the totality of the circumstances, the search and inventory of defendant's belongings subsequent to his arrest was merely a mechanical administrative procedure and not a pretext for uncovering further incriminating evidence. ICE policy requires that an inventory search of a new detainee be conducted immediately to safeguard the property of detainees and to prevent contraband from entering detention facilities. (*See* Doc. 26-1, at 2). Defendant's belongings were itemized on a standardized form for accountability and defendant acknowledged the accuracy of the form and signed it. (Doc. 26-2). This provides strong evidence that the search was conducted as a matter of procedure and not as a pretext to uncover incriminating evidence as defendant suggests. Further, ICE agents had enough evidence from the initial stop to arrest and either charge defendant or investigate further, obviating the need to rummage through defendant's belongings for further evidence. Defendant admitted to being in the country without permission and the driver alerted ICE agents to the fact that defendant was employed at the Shell Rock business. In light of these admissions, I find it unlikely that ICE agents would violate defendant's rights in hopes of finding additional evidence. Accordingly, I recommend that defendant's motion to suppress evidence on these grounds be **denied.**

## V. *CONCLUSION*

For the reasons set forth above, I respectfully recommend the Court **deny** Defendant's Motion to Suppress. (Doc. 22).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 26th day of July, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa